**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDY RODRIGUEZ PUPO,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.<br>Respondents. | Case No.: 26-cv-4342-BJC-GC<br>**ORDER GRANTING AMENDED PETITION FOR HABEAS CORPUS**<br>**[ECF Nos. 8, 11-12]** |

On July 28, 2026, Petitioner Andy Rodriguez Pupo ("Petitioner"), proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition"). ECF No. 1. On August 24, 2026, Petitioner filed an amended Petition. ECF No. 8. On September 9, 2026, Respondents filed a Return, ECF No. 11, to which Petitioner filed a Traverse on September 16, 2026. ECF No. 12. For the reasons set forth below, the Court **GRANTS** the Petition (ECF No. 8) and orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner, a citizen of Cuba, entered the United States on September 24, 2023 using the CBP One app. ECF No. 8 at 2; ECF No. 8-1 (Pupo Declaration) at ¶¶ 1-2. Petitioner was seeking asylum and, upon entry, he immediately received humanitarian parole and was released into the United States. ECF No. 8 at 2; ECF No. 8-1 at ¶¶ 1-2; ECF No. 11 at 3 (acknowledging receipt of humanitarian parole). While paroled, Petitioner lived in Florida, obtained a work permit, and found employment. ECF No. 8 at 2; ECF No. 8-1 at ¶¶ 1-3. He attended all his immigration hearings and submitted the relevant applications for

asylum and for adjustment of status under the Cuban Adjustment Act. *Id*. Petitioner's parole expired on September 4, 2025. ECF No. 11 at 2.

On July 7, 2026, Petitioner was stopped by police officers for a traffic violation, who then turned him over to Immigration and Customs Enforcement ("ICE"). ECF No. 8 at 2; ECF No. 8-1 at ¶¶ 4-5. Petitioner was initially released, but then re-detained by ICE. ECF No. 11 at 2. When ICE re-detained him, Petitioner alleged that ICE did not explain why his parole was revoked, and they did not provide him with an opportunity to contest the detention. ECF No. 8 at 2; ECF No. 8-1 at ¶¶ 4-5. Petitioner is currently detained at the Otay Mesa Detention Facility. ECF No. 11 at 2. Based on the filings, there is no indication that either a bond hearing or removal proceedings have occurred. *See id*. at 2 ("Petitioner had pending removal proceedings which remain pending before the immigration court").

On July 28, 2026, Petitioner filed a Petition for Writ of Habeas Corpus. ECF No. 1. On August 21, 2026, the Court issued a scheduling order and conditionally appointed Federal Defenders of San Diego, Inc. ECF No. 6. On August 24, 2026, Petitioner filed an amended Petition. ECF No. 8. On September 9, 2026, Respondents filed a return. ECF No. 11. Petitioner filed a traverse on September 16, 2026. ECF No. 12.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id*.

## III. DISCUSSION

Petitioner makes two claims. First, Petitioner contends that, in detaining him, ICE

failed to comply with its own regulations and the Administrative Procedure Act ("APA") because ICE neither had a basis to revoke Petitioner's parole nor provided adequate notice or reason prior to revocation. ECF No. 8 at 3. Petitioner further alleges that the revocation of his parole and subsequent detention, both without notice, justification, or an opportunity to be heard, violated the Due Process Clause. *Id*. at 5-7. Respondents do not directly address Petitioner's arguments. Instead, Respondents challenge the Court's jurisdiction and claim that Petitioner is subject to detention under 8 U.S.C. § 1225 because his parole expired. ECF No. 11 at 2-3. For this reason, Respondents contend that Petitioner is not entitled to "written notice of the expiration of his humanitarian parole" and was appropriately detained. *Id*. at 3-4. In his Traverse, Petitioner counters that, even assuming he was not entitled to notice of revocation following his parole's expiration, his detention without an opportunity to be heard violated his due process rights. ECF No. 12 at 2-4. This opinion follows.

**A. Jurisdiction**

Under 8 U.S.C. § 1252(g), except as otherwise stated, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." Although Respondents urge this Court to endorse a broad reading of this statute, *see* ECF No. 11 at 2-3, the Ninth Circuit has made clear that § 1252(g) must be read narrowly as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (emphasis in original) (citation omitted). Simply put, Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id*. at 997; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific

actions themselves.") (citation omitted). Challenges to unconstitutional practices and policies, including due process violations, that do not arise from the Attorney General's three permitted actions are, therefore, not subject to Section 1252(g). *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)).

Here, Petitioner's "objective [is] *not* to obtain judicial review of the merits of their [removal] proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id*. at 1052 (emphasis added); *see also* ECF No. 12 at 5 ("[Petitioner] challenges only violations of ICE's mandatory duties under the Constitution."). Such claims fall squarely within the Court's habeas authority. *Id*.; *see also Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders.").

Accordingly, the Court concludes it has jurisdiction over Petitioner's claim. *Id*; *see, e.g.*, *Komarov v. LaRose*, 2026 WL 2296992, at *1-2 (S.D. Cal. Aug. 10, 2026) (rejecting jurisdictional argument because due process challenges are not subject to 1252(g)); *Bertrand v. LaRose*, 2026 WL 2280642, at *2 (S.D. Cal. Aug. 6, 2026) (rejecting jurisdictional argument where due process challenges were "nonetheless independent of, the removal proceedings").

**B. Due Process**

**1. Petitioner is Entitled to Due Process**

The Fifth Amendment guarantees that "[n]o person shall be … deprived of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. This right extends to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 681 (2001); *see, e.g.*, *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.")

(citation omitted). Accordingly, once a noncitizen has "passed through our gates," they "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law" occur. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Due Process proceedings generally "require[] some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process").

Here, it is uncontested that Petitioner "passed through [the] gates" nearly three years ago and then "immediately" received parole. ECF No. 8 at 2; *see* ECF No. 11 at 1, 4. The government's decision to release Petitioner from custody, at that time, "create[d] 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [he] fail[s] to live up to the … conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). The "substantial amount of time" Petitioner has been present in the United States—three years—further solidifies his right to due process before removal. *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1163-64 (S.D. Cal. 2025) (finding that noncitizen's presence in United States for over a year entitled him to due process before removal); *see e.g.*, *Perez v. LaRose*, 2025 WL 3171742, at *4 (S.D. Cal. Nov. 13, 2025) (where "Petitioner is not an 'arriving' noncitizen but one that has been present in the United States for 11 months … he is afforded the Fifth Amendment's guaranteed due process before removal") (citation and quotation omitted); *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1179 (D. Nev. 2025) (petitioner's "liberty interest is particularly strong given his initial release from detention" three years prior).

Respondents concede that "Petitioner was previously released from custody on parole." ECF No. 11 at 4. However, they contend that the expiration of Petitioner's humanitarian parole renders his detention mandatory under 8 U.S.C. § 1225(b)(2), even without complying with due process. *Id*. at 4-5 ("There is no basis to order Petitioner's

immediate release from immigration detention based on the argument that he was not provided written notice[.]"). This is incorrect. Petitioner was granted liberty interests following his initial release from custody by the government. *See Pinchi*, 792 F. Supp. 3d at 1032. Liberty interests do not expire when parole expires. *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109-10 (E.D. Cal. 2025) (Petitioner's expired parole entitled him to due process preceding re-detention); *see, e.g.*, *Guillermo M.R. v. Kaiser*, 792 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause") (emphasis in original) (citation omitted); *Osaretin v. Warden, Otay Mesa Detention Ctr.*, 2026 WL 280077, at *2 (S.D. Cal. Feb. 3, 2026) ("Courts have repeatedly held that liberty interests do not expire when parole does."); *Faqeri v. Scott*, 2026 WL 194475, at *3 (W.D. Jan. 26, 2026) (noncitizens' "due process protections" are not "extinguished when [] parole expire[s]"); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest" that "did not expire along with Petitioner's parole agreement."). At a minimum, "Petitioner is entitled to a hearing or at least *some* process before being re-detained pending removal proceedings." *Perez-Chininin v. Mullin*, 2026 WL 2741872, at *2 (S.D. Cal. Sept. 16, 2026) (emphasis in original).

**2. Respondents' Failure to Adhere to Due Process**

To determine whether procedures are constitutionally sufficient, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). This test requires the Court to weigh: (1) "the private interest that will be affected by the official action;" (2) the "risk of erroneous deprivation of such interest through the procedures used;" and (3) "the [g]overnment's interest[.]" *Id*. at 334-35. After weighing these three factors, the Court finds that Respondent's revocation of his parole and detention, all without notice or an opportunity to be heard, constitutes a deprivation of Petitioner's due process rights.

First, Petitioner has a significant liberty interest in remaining free, which developed and strengthened over the near three years he resided in the United States. *See Noori*, 807 F. Supp. 3d at 1164. Following his entry into the United States, Petitioner received a work permit, obtained employment, and then submitted the necessary applications to seek asylum and to adjust his status under the Cuban Adjustment Act. ECF No. 8-1 at ¶¶ 1-4. All of these actions demonstrate Petitioner's strong interest in liberty. *See Noori*, 807 F. Supp. 3d at 1165 (such proceedings and authorizations following entry into the United States "create[] a protectable expectation of his due process rights in his removal proceedings and the fair procedures this country guarantees"). And, as already explained above, this liberty interest did not expire when his parole expired. *See Ramirez Tesara*, 800 F. Supp. 3d at 1136 (once a liberty interest is established, it may "only be revoked through methods that comport with due process."). Thus, the first *Mathews* factor weighs in Petitioner's favor.

Second, the risk of an erroneous deprivation of Petitioner's liberty interest is high because "neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F. Supp. 3d 1035 (citing *Singh v. Andrews*, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025). Petitioner was released and entered the United States on humanitarian parole. ECF No. 8 at 4; ECF No. 11 at 4. Humanitarian parole is not revoked when it expires. *See Noori*, 807 F. Supp. 3d at 1164, 1167-68. Under regulatory and statutory requirements, to revoke humanitarian parole, Respondents must show that the "purpose for which parole was authorized" has been served or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen]" within the United States *in addition to* providing written notice to the noncitizen. 8 C.F.R. § 212(5)(e). Thus, regardless of the parole's expiry, Respondents still needed to provide evidence that either the parole's purpose was served or that a public benefit, such as a showing that Petitioner was a flight risk or danger to the community, warranted revocation *prior* to doing so. *See Noori*, 807 F. Supp. 3d at 1164 (discretion to detain, in the context of revoking parole and deportation, must further "'two

regulatory goals'—ensuring future appearances and preventing danger to the community") (citing *Zadvydas*, 533 U.S. at 690). Respondents did not do so. Based on the filings, Petitioner has not received an opportunity to be heard or challenge the basis for his detention. Therefore, there is a high risk of an erroneous deprivation of Petitioner's interest such that the second *Mathews* factor weighs in his favor. *See Salazar v. Casey*, 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("[R]isk of erroneous deprivation of such [liberty] interest is high as Petitioner's parole was revoked without providing a reason for revocation or giving an opportunity to be heard.").

In that same vein, Respondents have failed to demonstrate a significant interest in detaining Petitioner without providing adequate due process. Respondents never alleged that providing notice or a pre-detention hearing would cause an administrative or financial burden. Instead, Respondents excuse their failure to provide due process based solely on their belief that Petitioner's detention was mandatory following the expiration of his parole. ECF No. 11 at 4-5. Respondents are incorrect. As discussed, liberty interests do not expire when parole expires. And "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Pinchi*, 792 F. Supp. 3d at 1036.

The Court finds that all *Mathews* factors weigh in favor of Petitioner. Regardless of whether his parole expired, Petitioner's liberty interest entitled him to due process. Petitioner neither received notice nor an opportunity to be heard prior to his parole revocation or detention. Failure to provide Petitioner with notice and an opportunity to be heard violated his due process rights. Petitioner's detention is, therefore, unlawful. *See Noori*, 807 F. Supp. 3d at 1166 (finding *Mathews* factors weighed in favor of Petitioner and that his due process rights were violated); *Salazar*, 2025 WL 3063629, at *5 ("[B]ecause Respondents detained Petitioner by revoking [his] parole in violation of the Due Process Clause, [his] detention is unlawful.").

## CONCLUSION

For the foregoing reasons, this Court **GRANTS** Petitioner's Amended Petition for

Habeas Corpus. ECF No. 8. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his pre-existing parole.[1]
2. Respondents are **ENJOINED AND RESTRAINED** from detaining Petitioner until Petitioner is provided with notice of the reasons for revocation of parole and a hearing to determine whether detention is warranted.

**IT IS SO ORDERED**.

Dated: October 20, 2026

Honorable Benjamin J. Cheeks
United States District Judge

[1] After a review of Petitioner's claims, the Court finds that Petitioner's APA argument—that Respondents acted arbitrarily and capriciously in revoking his parole without notice or justification—in this context, stems from the alleged Due Process violation. Accordingly, the Court finds that it need not separately address Petitioner's APA claim given the Court's conclusion that Respondents' failure to afford Petitioner due process calls for his immediate release.